1  DAVID CHIU, State Bar #189542
   City Attorney
2  MEREDITH B. OSBORN, State Bar #250467
   Chief Trial Deputy
3  KATHERINE B. BEARMAN, State Bar #280561
   Deputy City Attorney
4  Fox Plaza
   1390 Market Street, Sixth Floor
5  San Francisco, California 94102-5408
   Telephone:      (415) 554-4256
6  Facsimile:      (415) 554-3837
   E-Mail:         kate.bearman@sfcityatty.org
7
   Attorneys for Defendants
8  CITY AND COUNTY OF SAN FRANCISCO,
   NIKON DANDRIDGE, MARIA FOSTER-CAZEM,
9  HELGA ZIMMERER, JOE CHANG,
   SERGEANT BARRY, OFFICER ESCOBAR, and
10 OFFICER PUBILL[1]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL GOMEZ AND MARTHA GOMEZ,<br><br>    Plaintiffs,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, NIKON DANDRIDGE, MARIA FOSTER-CAZEM, HELGA ZIMMERER, JOE CHANG, OFFICER TUVERA, SERGEANT BARRY, OFFICER ESCOBAR, OFFICER PUBILL, and DOES 1-20,<br><br>    Defendants. | Case No. 21-cv-05394-JCS<br><br>**DEFENDANTS' NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS PLAINTIFFS' COMPLAINT (Fed. R. Civ. P. 12(b)(6)); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing Date:    January 7, 2022<br>Time:    9:30 a.m.<br>Place:    Courtroom F – 15th Fl.<br>    450 Golden Gate Ave.<br>    San Francisco, CA 94102<br><br>Trial Date:    Not Set |

---

[1] Defendant Nikon Dandridge is now Nikon Guffey. Defendant Officer Maria Escobar is now Maria Donati. As Defendants informed the Court in the October 8, 2021 Joint Case Management Statement, Officer Tuvera was killed in the line of duty in 2006. Accordingly, Officer Tuvera is not (and cannot be) properly named as a defendant. Defendants have asked Plaintiffs to dismiss Officer Tuvera from this action. Plaintiffs have said that they will stipulate to dismiss Officer Tuvera.

**NOTICE OF MOTION AND MOTION**

**PLEASE TAKE NOTICE** that on Friday, January 7, 2022, at 9:30 a.m., or as soon thereafter as this matter may be heard before the Honorable Joseph C. Spero, United States District Court, San Francisco, California, Defendants City and County of San Francisco, Nikon Guffey, Maria Foster-Cazem, Helga Zimmerer, Joe Chang, Jeffrey Barry, Maria Donati, and Jose Pubill will, and hereby do, move the Court for an order partially dismissing Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6).

As explained more fully in the Memorandum of Points and Authorities, Defendants move to dismiss all claims against Defendants Maria Donati and Jose Pubill because Plaintiffs fail to adequately plead that they were integral participants in the alleged constitutional violations.

Defendants base this Motion on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Complaint, and such argument as may be heard at the hearing on this matter.

Dated:  November 29, 2021

                                       DAVID CHIU
                                       City Attorney
                                       MEREDITH B. OSBORN
                                       Chief Trial Deputy
                                       KATHERINE B. BEARMAN
                                       Deputy City Attorney

                              By: */s/ Katherine B. Bearman*
                                       KATHERINE B. BEARMAN

                                       Attorneys for Defendants
                                       CITY AND COUNTY OF SAN FRANCISCO,
                                       NIKON DANDRIDGE, MARIA FOSTER-CAZEM,
                                       HELGA ZIMMERER, JOE CHANG,
                                       SERGEANT BARRY, OFFICER ESCOBAR, and
                                       OFFICER PUBILL

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION & SUMMARY OF ARGUMENT

Plaintiffs Crystal Gomez and Martha Gomez allege that on August 3, 2004—more than 17 years ago—employees of the City and County of San Francisco ("City") removed them from their mother's custody without a warrant and absent exigent circumstances.  Plaintiffs were approximately 20 months old (Crystal Gomez) and three years old (Martha Gomez) at the time.  Plaintiffs allegedly were returned to their mother's custody after seven days.  Plaintiffs bring this lawsuit under 42 U.S.C. § 1983, alleging violations of their constitutional rights to familial association and against unreasonable seizure under the First, Fourth, and Fourteenth Amendments of the U.S. Constitution.  Plaintiffs assert claims against current and former employees of the San Francisco Police Department ("SFPD") in their individual capacities; current and former employees of the San Francisco Department of Human Services (hereinafter, "Child Protective Services" or "CPS") in their individual capacities; and the City.  Defendants move to dismiss all claims against Defendant SFPD Officers Maria Donati (formerly Maria Escobar) and Jose Pubill because Plaintiffs fail to adequately plead that those Defendants were integral participants in the alleged constitutional violations.

## II.  FACTUAL BACKGROUND

On August 3, 2004, someone allegedly called the police to report that Plaintiffs' 5-year-old brother, James Gomez, was throwing objects out of the third-story window of Plaintiffs' home. (Compl. ¶¶ 44–45.)  SFPD Officer Tuvera and Defendant SFPD Officer Joe Chang visited Plaintiffs' home in response to the phone call.  (*Id.* ¶ 45.)  According to the Complaint, the officers arrived around 6:30 p.m.; knocked on the door; obtained permission to enter from Plaintiffs' 16-year-old relative; and learned that "Plaintiffs' mother was resting in the other room, having asked the [16-year-old] to look after the children temporarily."  (*Id.* ¶¶ 44–47.)  Plaintiffs allege that their mother "came out upon the officers' request."  (*Id.* ¶ 47.)  At some point, Plaintiffs allege, Defendant SFPD Sergeant Jeffrey Barry "responded to the scene to supervise."  (*Id.* ¶ 48.)  Sergeant Barry, Officer Tuvera, or Officer Chang then "called CPS to the scene" because "the home was in disarray."  (*Id.* ¶ 49.)  Defendant Nikon Guffey (formerly Nikon Dandridge), a child welfare worker for CPS, allegedly "responded to the scene."  (*Id.* ¶ 50.)

Plaintiffs allege that they were "partially" dressed and had "chocolate stains on their clothes." (*Id.* ¶ 51.) Plaintiffs further allege that "[n]othing was on fire", "[n]obody was bleeding", they "did not have bruises on their bodies", and they "did not appear to be malnourished." (*Id.* ¶¶ 52–53, 55–56.) According to the Complaint, "[i]t did not appear as though there was a substantial risk that the Plaintiffs would suffer serious harm or illness." (*Id.* ¶ 57.) Defendants nevertheless "decided to remove Plaintiffs from their mother, and from their home," Plaintiffs allege. (*Id.* ¶ 58.) Every individual Defendant allegedly participated in that decision. (*See id.* ¶ 54 (alleging that all individual Defendants "conferred, in person and/or by telephone" and "[i]t was decided that Plaintiffs would be immediately removed from their mother"); *id.* ¶ 59 (alleging that although "it is believed" that Defendant SFPD Officers Donati and Pubill "transported Plaintiffs away" from their home, "Plaintiffs are informed and believe" that every Defendant "discussed the situation and what to do," and "together jointly decided upon a course of action"); *id.* ¶ 30 (alleging that all Defendants acted as each other's agents and with each other's knowledge, and conspired to violate Plaintiffs' constitutional rights).)

Plaintiffs allege that Defendants "did not have a warrant to remove [them]"; did not "discuss obtaining a warrant"; "did not have consent to remove [them]"; and lacked "reasonable cause to believe that [they] were at imminent risk of serious bodily injury." (*Id.* ¶¶ 60–63.) Plaintiffs further allege that Defendants did not discuss alternatives to removing them or try to "minimize the scope of the" alleged "intrusion upon the Plaintiffs' constitutional rights." (*Id.* ¶ 65.) "Defendants, including [Donati] and Pubill," allegedly "transported the Plaintiffs away from their home." (*Id.* ¶ 64.)

According to the Complaint, the CPS Defendants filed a petition under California Welfare and Institutions Code § 300, which "alleg[ed] multiple counts of child neglect against Plaintiffs' mother." (*Id.* ¶ 68.) Nevertheless, Plaintiffs allege, they "were promptly returned to their mother on or about August 10, 2004." (*Id.* ¶ 69.) Plaintiffs allege that Defendants violated their rights to familial association under the First, Fourth, and/or Fourteenth Amendments of the U.S. Constitution, and their rights against unreasonable seizure under the Fourth Amendment. They assert claims for the alleged constitutional violations against all employee Defendants in their individual capacities and against the

City.  (*See id.* Counts I–IV.)  Plaintiffs' allegations in support of their claims for municipal liability are irrelevant to the instant Motion.

**III.    ARGUMENT**

      **A.    Legal Standard**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A motion to dismiss under Rule 12(b)(6) for failure to state a claim tests the legal sufficiency of a complaint.  *See, e.g.*, *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011).  Although Rule 8(a)(2) does not require "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a complaint will not survive a motion to dismiss unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a probability requirement," but it requires "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (internal quotation marks omitted).  Thus, a complaint that offers mere "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Id.* (internal quotation marks omitted).  Likewise, a complaint cannot survive a motion to dismiss if it relies on "naked assertion[s] devoid of further factual enhancement."  *Id.* (internal quotation marks omitted).

    Government officials must "obtain prior judicial authorization before" removing a child from a parent's custody "unless they possess information at the time of the seizure that establishes reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury."  *Mabe v. San Bernardino Cty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1106 (9th Cir. 2001) (internal quotation marks omitted).  "[T]he same legal standard applies in evaluating Fourth and Fourteenth Amendment claims for the removal of children."  *Wallis v. Spencer*, 202 F.3d 1126, 1137 n.8 (9th Cir. 2000).

### B. Plaintiffs Do Not Adequately Plead That Defendants Donati and Pubill Participated in the Alleged Constitutional Violations

Defendants move to dismiss all claims against Defendant SFPD Officers Donati and Pubill because Plaintiffs do not adequately plead that they meaningfully participated in the alleged constitutional violations.

"[F]or a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). In other words, "[a]n officer's liability under section 1983 is predicated on his 'integral participation' in the alleged violation." *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007) (quoting *Chuman v. Wright*, 76 F.3d 292, 294–95 (9th Cir.1996)). "'[I]ntegral participation does not require that each officer's actions themselves rise to the level of a constitutional violation,'" *Boyd v. Benton Cty.*, 374 F.3d 773, 780 (9th Cir. 2004) (internal quotation marks omitted), but "it does require some fundamental involvement in the conduct that allegedly caused the violation." *Blankenhorn*, 485 F.3d at 481 n.12.

To illustrate, a police officer's "mere presence" at an allegedly unconstitutional search, "without personal involvement in and a causal connection to the unlawful act," cannot create liability under Section 1983. *Jones*, 297 F.3d at 939; *see also Blankenhorn*, 485 F.3d at 481 n.12 (police officer who "arrived on the scene after the [challenged] arrest was completed" and police officer "who at most provided crowd control, did not participate in any integral way in the arrest"). By contrast, the Court of Appeals for the Ninth Circuit has determined that police officers were integral participants in an alleged Fourth Amendment violation where they provided armed backup for another officer who "deployed [a] flash-bang" device as part of an unconstitutional search. *Boyd*, 374 F.3d at 780. The Court explained that the officers who provided backup were "aware of the decision to use the flash-bang, did not object to it, and participated in the search operation knowing the flash-bang was to be deployed." *Id.*

Here, the Complaint asserts claims against Officers Donati and Pubill for alleged constitutional violations based only on their "mere presence" in or outside of Plaintiffs' home. *Jones*, 297 F.3d at

939.  Indeed, the Complaint offers only one non-conclusory allegation regarding those officers: that they "transported the Plaintiffs away from their home." (Compl. ¶ 64; *see also id*. ¶ 59.)  Although Plaintiffs allege that all Defendants "conferred, in person and/or by telephone", "discussed the situation and what to do," and "jointly decided upon a course of action" (*id.* ¶¶ 54, 59), these allegations lack facial plausibility for Officers Donati and Pubill.  First, the allegations in the Complaint are ambiguous regarding whether those officers entered Plaintiffs' home.  Even assuming they entered, there are no allegations concerning when they entered.  Without more, an inference that Officers Donati and Pubill entered Plaintiffs' home after the other Defendant(s) made the alleged unconstitutional decision to remove Plaintiffs is equally plausible as an inference that they entered the home before that decision was made.  *Cf. Twombly*, 550 U.S. at 557 (to state a claim for violation of Section 1 of the Sherman Act, "allegations of parallel conduct . . . must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action").  The Complaint, therefore, does not permit a reasonable inference that Officers Donati and Pubill played a causal role in the alleged unconstitutional decision.

Likewise, the lack of any allegation that Officers Donati and Pubill acted in supervisory roles renders tenuous any inference that the other SFPD Defendants sought their input over the telephone regarding whether exigent circumstances justified removing Plaintiffs from their home.  Thus, the Complaint does not give rise to a reasonable inference that Officers Donati and Pubill knew about the circumstances underlying the alleged constitutional violations or approved the decision to remove Plaintiffs from their home.  Finally, Plaintiffs' allegation that all Defendants "were integral participants in the decision to remove [them] from their mother" (Compl. ¶ 59), is "a legal conclusion couched as a factual allegation", and thus deserves no weight.  *Twombly*, 550 U.S. at 555 (internal quotation marks omitted).  The same is true of Plaintiffs' bare allegations that all Defendants acted as each other's "agent[s]"; all Defendants acted with each other's "knowledge, permission and consent"; and all Defendants "conspir[ed]" to violate Plaintiffs' constitutional rights.  (Compl. ¶ 30.)

To summarize, Plaintiffs' allegation that Officers Donati and Pubill transported them away from their home does not plausibly allege that those officers played a meaningful role in, were aware of, or approved the alleged unconstitutional decision to remove Plaintiffs from their home.  *See, e.g.*,

*Felarca v. Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018) ("Officers may not be held liable [under Section 1983] merely for being present at the scene of a constitutional violation or for being a member of the same operational unit as a wrongdoer."); *Blankenhorn*, 485 F.3d at 481 n.12 (an officer that arrives on the scene after the challenged arrest occurred is not an integral participant in the arrest for purposes of Section 1983); *Jones*, 297 F.3d at 939 (similar). Accordingly, Defendants ask the Court to dismiss all claims against Officers Donati and Pubill.

## CONCLUSION

For the foregoing reasons, Defendants respectfully ask the Court to grant their Partial Motion to Dismiss and dismiss all claims against Defendants Donati and Pubill.

Dated:  November 29, 2021

> DAVID CHIU
> City Attorney
> MEREDITH B. OSBORN
> Chief Trial Deputy
> KATHERINE B. BEARMAN
> Deputy City Attorney
>
>
> By: */s/ Katherine B. Bearman*
> KATHERINE B. BEARMAN
>
> Attorneys for Defendants
> CITY AND COUNTY OF SAN FRANCISCO,
> NIKON DANDRIDGE, MARIA FOSTER-CAZEM,
> HELGA ZIMMERER, JOE CHANG,
> SERGEANT BARRY, OFFICER ESCOBAR, and
> OFFICER PUBILL